Ernest J. Franceschi, Jr. (State Bar No. 112893)
FRANCESCHI LAW CORPORATION
800 Wilshire Boulevard, 12th Floor
Los Angeles, California 90017
Telephone:  (213) 622-0835
Facsimile: (213) 622-0837
Email: ejf@franceschilaw.com

Attorney for Plaintiffs
DELTA DAWGS CONSTRUCTION CORPORATION,
TAMMY WOLOSKI, and PAUL WOLOSKI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELTA DAWGS CONSTRUCTION CORPORATION, a California corporation, TAMMY WOLOSKI, an individual; PAUL WOLOSKI, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> SERVPRO INDUSTRIES, INC., a Nevada corporation; RICHARD CONNER, aka RICKY CONNER, an individual, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:** <br><br> 1)  Violation of the *Racketeer Influenced and Corrupt Organizations Act* (RICO); <br><br> 2) Violation of the California *Franchise Relations Act* (CFRA)*;* <br><br> 3)  Violation of the California *Unfair Practices Act*, *Business and Professions Code* Section 17200, et seq**.**; <br><br> 4)   Breach of Contract*;* <br><br> 5)   Breach of the Implied Covenant of Good Faith and Fair Dealing; <br><br> 6)   Receiving Stolen Property; <br><br> 7)   Conversion; <br><br> 8)  Discrimination under 42 U.S.C. Section 1981; <br><br> 9)  Discrimination under the *Unruh Civil Rights Act* <br><br> **DEMAND FOR TRIAL BY JURY** |

COME NOW Plaintiffs DELTA DAWGS CONSTRUCTION CORPORATION, TAMMY WOLOSKI, and PAUL WOLOSKI (hereinafter referred to as "Plaintiffs" collectively) and for cause of action against Defendants, and each of them, allege as follows:

## JURISDICTION AND VENUE

1.     The jurisdiction of this honorable court is invoked pursuant to 28 U.S.C. Section 1332; The state law claims are brought pursuant to the Court's supplemental Jurisdiction, 28 U.S.C. Section 1367(a).  The Court has subject matter jurisdiction pursuant to section 1964( c) of the *Racketeer Influenced and Corrupt Organizations Act* ("RICO"), 18 U.S.C. section 1964( c) and 42 U.S.C. section 1981.  There is also jurisdiction under 28 U.S.C. Section 1322 (diversity of citizenship and amount in controversy) because the Plaintiffs are citizens of California and each of the Defendants is a citizen of Tennessee.

2.     Venue is proper in the Central District of California because the operative events upon which this action is based occurred therein and each of the Defendants maintains offices and an official presence therein. 28 U.S.C. Section 1391(b) and ( c) and 18 U.S.C. section 1965

## THE PARTIES

3.     Plaintiff Delta Dawgs Construction Corporation (DDCC) is a corporation organized and existing under the laws of the State of California with its principal place of business at 9906 Lower Azusa Road, El Monte, California 91731. DDCC at all relevant times has done business under the dba "SERVPRO of Rosemead/South El Monte" as a franchisee.

4.     Plaintiff Tammy Woloski was and now is an individual residing in the State of California within the judicial district of this Court and at all relevant times was an officer and director of DDCC.

5.     Plaintiff Paul Woloski was and now is an individual residing in the State of California within the judicial district of this Court and at all relevant times

was an officer and director of DDCC.

6.      Defendant SERVPRO Industries, Inc. ("SERVPRO") is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business located at 801 Industrial Boulevard, Gallatin, Tennessee 37066. Defendant SERVPRO is a franchisor who actively does business throughout the United States and Canada, including the State of California and in the County of Los Angeles. Plaintiffs are informed and believe that SERVPRO maintains one or more physical offices with employees in California, including but not limited to its Regional Training Center in Rancho Cucamonga, within the judicial district of this Court.

7.      Defendant Richard Conner, aka Ricky Conner ("Conner") is an individual residing in the State of Tennessee and at all relevant times was SERVPRO's Western Region Field Operations Manager.

**STATEMENT OF FACTS PERTINENT TO ALL CLAIMS**

8.      Defendant SERVPRO has developed and adopted certain skills, concepts, business techniques, marketing systems, methods, policies and procedures known as the "System" for use in remediation of damage to buildings following fires, floods and other natural disasters. The System includes such activities as floor, drapery, carpet and floor cleaning, carpet sales and installation, as well as construction, reconstruction, maintenance and janitorial services and mold remediation.

9.      In connection with the System, SERVPRO owns certain intellectual property, including trademarks, trade names, logos and the SERVPRO® mark which it licenses to franchisees across the United States in non-exclusive geographic territories pursuant to a written franchise agreement, a true and correct copy of which is attached as *Exhibit 1* and made a part hereof by reference in this Complaint.

10.     In or about August 15, 2015 Plaintiff Tammy Woloski, the CEO of DDCC approached SERVPRO about her interest in acquiring a SERVPRO franchise.

Following Tammy Woloski's inquiry, SERVPRO sent her a franchise license agreement *Exhibit 1* the "FLA")

11.    The FLA was executed on August 28, 2015 by both Tammy and Paul Woloski and on October 12, 2015 by SERVPRO's President, Randall Isaacson.  The FLA provided for a franchise term of five years up to and including October 11, 2020 with an option to renew for an additional five year term.  There was also an addendum executed acknowledging that the under the *California Franchise Relations Act* (CFRA) that if certain terms and conditions contained in the FLA were contrary to California law, that they may not be enforceable.

12.    In order to perform its obligations under the FLA, SERVPRO required DDCC to purchase a work vehicle from SERVPRO and to finance the purchase through SERVPRO through a promissory note in the amount of $32,016.95 at an interest rate of 2.9% payable in forty eight monthly installments of $707.26. The vehicle bears the SERVPRO® marks, logos, and trade dress. Absent expensive modifications, it is not suitable for any use other than SERVPRO work.

13.    In addition to having to purchase a work vehicle from SERVPRO, DDCC was required to purchase equipment directly from Servpro necessary to implement the System and was prohibited from purchasing similar equipment from other much less expensive sources.  Plaintiffs allege that SERVPRO sold its equipment to DDCC at prices well above the market rate for equipment of like kind and quality.

14.    Plaintiffs allege that SERVPRO required DDCC to purchase a variety of SERVPRO and SERVPRO affiliated liability insurance policies as a franchise condition, which premiums increased exponentially every year during DDCC's operation as a franchise.  Plaintiff is further informed and believes that SERVPRO and/or its affiliated companies are not admitted insurance companies in California and were not, and are not authorized to transact the business of insurance in California.

15.    On or about September 2, 2015, DDCC received SERVPRO's welcome letter containing detailed instructions designed to initiate DDCC's lengthy training process.  Both Tammy and Paul Woloski successfully completed this lengthy training process at SERVPRO's headquarters in Tennessee in December 2015, after which they returned to California to conduct their franchise operations.

16.    Because the FLA's territorial policy provision required DDCC to have an office in its operating territory, at the time of the FLA's execution, DDCC secured an office location for a term of five (5) years at 9443 Valley Boulevard, Rosemead, California 91770.  The Rosemead address was listed as the formal business address for DDCC on the SERVPRO website until SERVPRO terminated the FLA.

17.    Even though DDCC already had an office location in compliance with the FLA territorial policy, on or about December 29, 2015 SERVPRO informed DDCC of its decision to permit an exception to the FLA territorial policy and DDCC was "permitted" to operate out of its other office located at 9906 Lower Azusa, El Monte, California (the "El Monte Address").  Notably, the El Monte address is only minutes away from DDCC's territory of operation.

18.    Plaintiffs are informed and believe and based thereon allege that several SERVPRO franchises located in California hold their offices outside of their respective operational territories.

19.    As required by the FLA, Tammy Woloski attended and successfully completed Servpro's Business Development Program in August of 2016 and all training required by the FLA and Servpro.

20.    In addition to completing all of the foregoing training, Tammy Woloski would take time to meet with SERVPRO representatives to address any questions or concerns.  She did so even though some of the meetings were unscheduled. Defendant Conner and his regional team members would show up unannounced and demand to meet with Tammy Woloski.  Conner appeared on numerous occasions without notice and would turn on DDCC's computers and take photographs and

screen shots in DDCC's office.  Connor exhibited outward hostility toward Tammy Woloski and maintained a condescending tone during all of his interactions with her that conveyed a nonverbal message "SERVPRO does not need you, but you need SERVPRO."

21.    On one occasion, Conner and Tammy Woloski got into an argument about Conner's disrespectful comments toward her.  On another occasion, during the lengthy training process, Conner told Tammy Woloski that he could return Plaintiff's franchise fees if she did not want to follow his direct orders.  According to Conner, SERVPRO simply did not need her or her franchise.  Tammy Woloski, unmoved by the attempted intimidation tactic, responded by demanding her money back.  However, Conner refused to refund the franchise fees.

22.    Plaintiffs are informed and believe that all SERVPRO franchises are afforded the benefits of the National Account Participation Program (the "NAPP").  Under the NAPP, DDCC was entitled to receive fees for the work sent to DDCC through SERVPRO's national insurance partners.

23.    Shortly after the effective day of the FLA, Conner represented to Tammy Woloski that as a rapidly growing franchise, it was in DDCC's best interest to temporarily suspend participation in the NAPP.  Moreover, Conner represented to Tammy Woloski that DDCC could reenter the NAP at any time after leaving the program.

24.    In reliance on said representations made by Conner, DDCC opted out of the NAP on or about December 26, 2016.  However, later when Tammy Woloski wanted to reinstate DDCC's participation in the NAPP, Conner told her that she was required to purchase additional SERVPRO equipment to accommodate the anticipated increase in the workload associated with DDCC's return to the NAPP.

25.    DDCC then purchased additional SERVPRO equipment and SERVPRO insurance specified by Conner.  However, Conner refused to reinstate DDCC to the NAPP.

26.     Throughout the time that Plaintiffs operated the franchise, Conner would regularly appear at DDCC's office without notice and threaten violations of the FLA as a method to extort money from DDCC, including but not limited to a cash payment to Conner in the amount of $3,500.00 and "gifts" of merchandise to Conner (a tea set and wine) valued at $7,500.00. Payments by cash and check in the amount of $1,200.00 was also made to one of Conner's team members by the name of Bruce, as well as a Louis Vuitton scarf as a purported "gift" to another of Conner's team members by the name of Ronnie.

27.     Despite Conner's acts and omissions, DDCC's operation of the SERVPRO franchise was successful and the company grew rapidly.  DDCC serviced numerous homeowners struck by disaster, assisting them to restore their homes. When homes incurred damage, the homeowners would tender the claim to their insurance carriers.  The carriers would then send DDCC to the property to perform the repairs, most of which would be paid for by the carriers.  DDCC would assess the necessary repairs pursuant to insurance standards.  Upon completing the restoration projects, homeowners repeatedly left DDCC glowing review on sites such as Yelp. Homeowners repeatedly thanked DDCC for restoring their homes without the combative responses that people have come to expect from insurance services.

28.     Although DDCC always performed the necessary repairs, SERVPRO wanted DDCC to decline certain necessary repairs and "cut-corners" where possible to lower the total amount charged to insurance carriers. DDCC viewed such a practice as unethical and refused to engage in a practice designed solely to save costs to insurance companies to the detriment of homeowners.

29.     On or about November 1, 2017 DDCC received an unexpected Notice of immediate "Termination of the Franchise License Agreement," a true and correct copy of which is attached hereto as *Exhibit 2* and made a part of this Complaint. In the Notice of Termination, SERVPRO alleges without any supporting documentation that several insurance companies had complained about "price gouging and unethical

7

billing practices" by DDCC and that there were "nine written complaints" about DDCC, although none were provided to DDCC and SERVPRO has refused Tammy Woloski's request that they be produced and that Plaintiffs be given the opportunity to "cure"

## FIRST CLAIM FOR RELIEF FOR VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT [RICO]

30.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 29 of this Complaint and make the same a part hereof in this claim for relief,

31.    This claim for relief arises under sections 1962(a) and (d) of RICO and is asserted against all defendants.

32.    Each plaintiff is a "person," as that term is defined in section 1961(3) of RICO.

33.    Each named defendant is a "person," as that term is defined in section 1961(3) of RICO

34.    The enterprise, for the purpose of RICO consists of the corporation SERVPRO Industries, Inc., which was and is engaged in activities that affect interstate commerce.

35.    Ricky Conner and SERVPRO participated in a scheme to extort monies and property from franchisees whereby Conner would threaten to "violate" the FLA unless the franchisee would pay cash to Conner on behalf of SERVPRO and/or provide "gifts to Conner.   Conner would also from time to time extort monies from franchisees by threatening to "violate" the FLA unless the franchisee purchased more equipment from SERVPRO.

36.    As alleged above, Conner and SERVPRO have committed and/or aided and abetted a pattern of criminal acts including, but not limited to:

(a)     **Extortion in violation of California *Penal Code* section 518**

First Predicate Act:

A payment by cash from Tammy Woloski to Conner in the amount of $3,500.00 together with merchandise valued at $7,500 (wine and a tea set) in June of 2016 at DDCC's El Monte office to avoid a threatened "violation" of the FLA.

Second Predicate Act:

A payment by merchandise (Louis Vuitton silk scarf and Chanel gift box) from Tammy Woloski to Conner's team member Ronnie, in February 2016 to Conner's team member by the name of Ronnie at a SERVPRO office in San Diego, California to avoid "not being hassled."

Third Predicate Act:

A payment by cash and check in the amount of $1,200.00 to Conner's team member by the name of Bruce by Tammy Woloski to avoid termination of the FLA in June 2016 at DDCC's Rosemead office.

(b)     **Engaging in interstate travel in furtherance of the racketeering enterprise in violation of 18 U.S.C. section 1952**

Fourth Predicate Act:

Interstate travel by Conner from his home in Tennessee to California for the purpose of engaging in extortion of the Plaintiffs in relation to the First Predicate Act on or about June 2016.

Fifth Predicate Act:

Interstate travel by Conner from his home in Tennessee to California for the purpose of engaging in extortion of the Plaintiffs in relation to the Second Predicate Act in or about 2016.

( c)     **Mail and wire fraud in violation of 18 U.S.C. sections 1341 and 1343**

Conner falsely promised Tammy Woloski in April 2016 that DDCC would be reinstated to the NAPP if she ordered more equipment from SERVPRO.  In reliance

on Conner's false promise, Tammy Woloski placed an order for more SERVPRO equipment in June 2016 by means of the SERVPRO website, which order was accepted by SERVPRO.  Payment for the equipment was made by check drawn on the account of DDCC and deposited into the United States Mail in California addressed to SERVPRO in Tennessee.  After DDCC purchase the unnecessary equipment, SERVPRO refused to reinstate DDCC to the NAPP.

37.     Each of the foregoing wrongful acts constitute "racketeering activity as that term is defined in section 1961(1) of RICO.  Each such act of racketeering activity had similar purposes, involved the same or similar participants and methods of commission and had similar results impacting upon similar victims, namely, the Plaintiffs.  Therefore, these wrongful acts constituted a "pattern of racketeering activity," as that term is defined in section 1965(5) of RICO.

38.     As a direct and legal result of the violations committed by SERVPRO and Conner of sections 1962(a) and (d) of RICO, Plaintiffs have been injured in their business or property and have suffered pecuniary loss as will be stated at time of trial according to proof and shall be trebled pursuant to section 1964( c) of RICO.  Plaintiffs are also entitled to a compulsory  award of attorney fees and costs on this claim for relief.

39.     Plaintiffs allege that there is a likelihood of continued racketeering activity.  SERVPRO has numerous franchises throughout the United States and California, all of which are subject to the type of criminal predicate acts alleged herein.  For this reason, a substantial risk of continued racketeering activity exists that will continue unless enjoined by this Court under RICO's broad remedial remedies.

## SECOND CLAIM FOR RELIEF FOR VIOLATION OF THE
## CALIFORNIA FRANCHISE RELATIONS ACT [CFRA]

40.     Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 29 of this Complaint and make the same a part hereof in this claim for relief.

41.     This claim for relief arises under the *California Franchise Relations Act,* California *Business & Professions Code* section 20000, et seq. which regulates the operation of franchises and franchise agreements in California.

42.     *Business & Professions Code* section 20020 provides that no franchisor may terminate a franchise prior to the expiration of its term without "good cause." For purposes of the statute, "good cause" shall be limited to the failure of the franchisee to substantially comply with the lawful requirements imposed upon the franchisee by the FLA.  Moreover, a franchisee shall be given at least sixty (60) days notice in advance of the termination and a reasonable opportunity of no less than sixty (60) days to cure the failure from the date of the non compliance.  Plaintiffs allege that SERVPRO failed to provide the requisite sixty notice of intent to terminate the FLA and did not provide the required opportunity to cure the purported failure, all in violation of section 20020

43.     *Business & Professions Code* section 20035 provides that in the event a franchisor terminates or fails to renew a franchise, "in violation of this Chapter" the franchisee "shall be entitled to receive from the franchisor the fair market value of the franchised business and franchise assets and any other damages cause by the violation of this chapter."  Plaintiffs are informed an believe that the fair market value of the franchise at the time of termination was Six million, eight hundred thousand dollars ($6,800,000.00), and the fair market value of the assets that Plaintiff purchased from SERVPRO is approximately one hundred seventy five thousand dollars ($175,000.00). Plaintiffs are also entitled to an order rescinding the *Secured Promissory Note*, for the work vehicle that SERVPRO required DDCC to purchase, and for restitution of all payments made to SERVPRO under the note.  A true and

correct copy of said note is attached as *Exhibit 3* and made a part hereof by reference.

44.    *Business & Professions Code* section 20040.5 declares that any venue provision in a franchise agreement pertaining to a franchise operating in the state of California which specifies a dispute resolution venue outside of the state of California is void.  The FLA contains a venue provision that requires an action arising out of the FLA to be brought "in the United States District Court for the Middle District of Tennessee in Nashville, Tennessee, or the Circuit Court of Chancery Court of either Davidson or Sunmer County, Tennessee..."

45.    Plaintiffs allege that SERVPRO on the very same day that it sent them *Exhibit 3* and in reliance on the void venue provision initiated an unlawful spurious action against them in the United States District Court of the Middle District of Tennessee, At Nashville, Case No. 3:17-cv-01433 alleging *Lanham Act* violations and seeking to enjoin Plaintiffs from continuing to use the name SERVPRO and associated marks as well as operating a competing business in California.

46.    Plaintiffs request that the Court declare this venue provision to be void and issue Preliminary Injunction followed by a Permanent Injunction prohibiting the enforcement thereof against Plaintiffs as well as any franchisee operating a SERVPRO franchise in California.

45.    Plaintiffs allege that the FLA at paragraph 13.9 contains a provision that SERVPRO will be entitled to recover attorney fees in the event that an action is brought which arises from the FLA.  Plaintiffs allege that under California law, a unilateral attorney fee provision is deemed to be bilateral and as such Plaintiffs shall be entitled to an award of attorney fees and costs on this claim for relief.

## THIRD CLAIM FOR RELIEF FOR VIOLATION OF THE CALIFORNIA UNFAIR PRACTICES ACT

46.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 45 of this Complaint and make the same a part hereof in this claim for relief.

47.    California *Business and Professions Code Section 17200, et. seq.*,

commonly known as the California *Unfair Practices Act* prohibits any unlawful and/or unfair business practice.  *Section 17302* permits Courts to grant injunctive or other remedial relief to abate the offending practice.

48.    Plaintiffs allege that SERVPRO requires California franchisees to enter into an FLA that violates California law and contains provisions that are void such as the unlawful venue provision described in paragraphs 44 and 45.  If SERVPRO decides to terminate a franchise, it will then unfairly and in violation of California law file suit against franchisees in Tennessee, as it has done with Plaintiffs, in order to make the action burdensome and costly to defend and thereby obtain an unfair advantage over the franchisees.

49.     Plaintiff alleges that pursuant to California *Business & Professions Code Section 17302,* this court has broad remedial powers to fashion appropriate equitable relief necessary to deter widespread, unfair or deceptive business practices directed at the citizens of the State of California.  Accordingly, Plaintiff requests that this Court issue an injunction prohibiting Defendants from requiring any California franchisee to sign an FLA that contains the void venue provision and to notify all current California franchisees in writing of this Court's order that said venue provision is void and unenforceable.

50.    By reason of the acts of Defendants, Plaintiffs are entitled to the foregoing remedies including an award of attorney fees in the accordance with the provisions of *California Code of Civil Procedure Section 1021.5.*

### FOURTH CLAIM FOR RELIEF FOR BREACH OF CONTRACT

51.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 50 of this Complaint and make the same a part hereof in this claim for relief.

52.    DDCC and SERVPRO executed the FLA in August and October of 2015 respectively.  Under the terms of the FLA, DDCC had a right to operate the franchise for a term of five years from the date SERVPRO executed the FLA.

53.    SERVPRO breached various provisions of the FLA on November 1,

13

2017 when it sent DDCC the Notice of Termination with no opportunity to cure any alleged violations.

54.     In acting as described above, DDCC alleges that SERVPRO has at a minimum failed to produce a factual record of the nine (9) purported complaints made against DDCC as alleged in the Notice of Termination; failed to substantiate any allegations of DDCC's ongoing price gouging, over billing, and customer intimidation; disregarded DDCC's outstanding customer service rating within and outside of its operational territory; overlooked DDCC's well-working relationship with SERVPRO's regional office in Southern California; and ignored the fact that SERVPRO franchises are often subject to lawsuits by SERVPRO customers.

55.     As a direct and legal result of SERVPRO's wrongful termination of the FLA,  DDCC was harmed in the amount of at least the sum of $1,433,581.08 or more, with the exact sum to be proven at time of trial.

56.     Plaintiffs allege that the FLA at paragraph 13.9 contains a provision that  SERVPRO will be entitled to recover attorney fees in the event that an action is brought which arises from the FLA.  Plaintiffs allege that under California law, a unilateral attorney fee provision is deemed to be bilateral and as such Plaintiffs shall be entitled to an award of attorney fees and costs on this claim for relief.

## FIFTH CLAIM FOR RELIEF FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

57.     Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 56 of this Complaint and make the same a part hereof in this claim for relief.

58.     DDCC and SERVPRO executed the FLA in August and October of 2015respectively.  Under the terms of the FLA, DDCC had a right to operate the franchise for a term of five years from the date SERVPRO executed the FLA.

59.     There existed and (still exists) an implied covenant of good faith and fair dealing imposed by law whereby SERVPRO implicitly covenanted that it would act in good faith in honoring its obligations to DDCC and that it would do nothing to

impair DDCC's rights under the FLA, the Secured Promissory Note, and other related agreements.

60.    SERVPRO breached the FLA on November 1, 2017, when it sent DDCC the Notice of Termination without a good faith basis to believe that the allegations contained therein were true.

61.    Plaintiffs further allege that SERVPRO also acted in bad faith each and every time Conner showed up at DDCC's offices and threatened violations of the FLA as a method to extort money from the Plaintiffs.

62.    At the time of DDCC's receipt of the Notice of Termination, it had done all of the significant things that the FLA required it to do.

63.    In acting as described above, DDCC alleges that SERVPRO has at a minimum failed to produce a factual record of the nine (9) purported complaints made against DDCC as alleged in the Notice of Termination; failed to substantiate any allegations of DDCC's ongoing price gouging, over billing, and customer intimidation; disregarded DDCC's outstanding customer service rating within and outside of its operational territory; overlooked DDCC's well-working relationship with SERVPRO's regional office in Southern California; and ignored the fact that SERVPRO franchises are often subject to lawsuits by aggrieved SERVPRO customers.

64.    As a direct and legal result of SERVPRO's wrongful termination of the FLA,  DDCC was harmed in the amount of at least the sum of $1,433,581.08 or more, with the exact sum to be proven at time of trial.

65.    Plaintiffs further allege that the conduct of SERVPRO and Conner was malicious and oppressive and deliberately calculated to cause financial injury to the Plaintiffs and to unjustly enrich themselves by wrongfully retaining the franchise fees Plaintiffs paid to SERVPRO as well as the money from the equipment sales to Plaintiffs that were required by SERVPRO. For these reasons, an award of punitive and exemplary damages is warranted in an amount sufficiently large to set a public

example of deterrence, in the minimum amount of $10,000,000.00 against each Defendant.

66.     Plaintiffs allege that the FLA at paragraph 13.9 contains a provision that SERVPRO will be entitled to recover attorney fees in the event that an action is brought which arises from the FLA.  Plaintiffs allege that under California law, a unilateral attorney fee provision is deemed to be bilateral and as such Plaintiffs shall be entitled to an award of attorney fees and costs on this claim for relief.

**SIXTH CLAIM FOR RELIEF FOR VIOLATION**

**OF CALIFORNIA *PENAL CODE* section 496**

67.     Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 66 of this Complaint and make the same a part hereof in this claim for relief.

68.     Plaintiffs allege that Conner and his team wilfully stole, received, and withheld DDCC's liquid assets, as "under the table" payments necessary to ensure continued operation of the franchise.  Conner and his team would threaten violations of the FLA as a method to extort DDCC's payment of money.

69.     Each of the foregoing acts giving rise to this claim for relief were committed by Conner and his team within the course and scope of their employment with SERVPRO.  SERVPRO placed Conner in a position to Commit these acts by authorizing Conner to act as its Field Operations Manger for the Western Region. DDCC at all relevant times reasonably relied on Conner's apparent authority to act on behalf of SERVPRO.  Accordingly SERVPRO is vicariously liable for Conner's conduct as a matter of law.

70.     Pursuant to *Penal Code* section 496( c), Defendants and each of them are liable to Plaintiffs for treble damages as well as attorney fees and costs on this claim for relief.

## SEVENTH CLAIM FOR RELIEF FOR CONVERSION

71.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 70 of this Complaint and make the same a part hereof in this claim for relief.

72.    At all relevant times, DDCC owned and had a right to possess its own liquid assets, including without limitation the specific amounts paid to Conner and his team during his shakedown visits.

73.    Conner intentionally and substantially interfered with DDCC's property in many ways, including without limitation, stealing of DDCC's liquid assets, under threats of impending FLA violations.

74.    No Plaintiff ever consented to Conner's aforementioned conduct.  To the extent that Conner was able to obtain DDCC's consent to the transfer of liquid assets, such consent was obtained through threats of impending FLA violations.

75.    By reason of the foregoing, Conner exercised dominion and control over DDCC's property and converted same to his and SERVPRO's own use.  In doing so, Conner's conduct was a substantial factor in causing harm to DDCC's finances.

76.    Neither Conner or SERVPRO have returned and continue to refuse to return the converted property, thereby having manifested the intent to permanently deprive Plaintiffs of their property.

77.    Each of the foregoing acts giving rise to this claim for relief were committed by Conner and his team within the course and scope of their employment with SERVPRO.  SERVPRO placed Conner in a position to Commit these acts by authorizing Conner to act as its Field Operations Manger for the Western Region. DDCC at all relevant times reasonably relied on Conner's apparent authority to act on behalf of SERVPRO.  Accordingly SERVPRO is vicariously liable for Conner's conduct as a matter of law.

78.    As a direct and legal result of Conner and Servpro's conduct as described in this claim for relief, DDCC was harmed in the amount of at least the sum of $1,433,581.08 or more, with the exact sum to be proven at time of trial.

79.    Plaintiffs further allege that the conduct of SERVPRO and Conner was malicious and oppressive and deliberately calculated to cause financial injury to the Plaintiffs and to unjustly enrich themselves by wrongfully stealing Plaintiff's property. For these reasons, an award of punitive and exemplary damages is warranted in an amount sufficiently large to set a public example of deterrence, in the minimum amount of $10,000,000.00 against each Defendant.

<u>**EIGHT CLAIM FOR RELIEF BY PLAINTIFF**</u>

<u>**TAMMY WOLOSKI AGAINST SERVPRO AND CONNER**</u>

<u>**FOR DISCRIMINATION UNDER 42 U.S.C. SECTION 1981**</u>

80.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 79 of this Complaint and make the same a part hereof in this claim for relief.

81.    Pursuant to 42 U.S.C section 1981 DDCC through its Asian owner Tammy Woloski, is entitled to make and enforce contracts as is enjoyed by white citizens.  The "making and enforcement of contracts" is contemplated to include the making, performance, modification, and termination of contracts, as defined in section 1981(b).

82.    SERVPRO and Conner violated Plaintiff Tammy Woloski and DDCC's rights under section 1981 when they intentionally discriminated against DDCC in forcing DDCC to overpay for numerous SERVPRO equipment items, forcing DDCC to execute the Promissory Note to secure a loan for a SERVPRO work vehicle, purporting to grant an exception to the FLA's territorial policy, although DDCC already had an office location within its prescribed territory, wrongfully advising DDCC that it could return to the National Accounts Participation program after DDCC's decision to temporarily leave the program, and extorting DDCC for "under the table" shakedown payments unrelated to DDCC's payment obligations under the FLA and Promissory Note by way of threats of termination.

83.    Mrs. Woloski's race and Asian ethnicity were at the heart of Defendant's intentional decision to discriminate against DDCC.

84.     As a result of SERVPRO's and Conner's intentional acts and the subsequent termination of the FLA, DDCC was harmed in the amount of at least the sum of $1,433,581.08 or more, with the exact amount to be proven at time of trial.

85.     Plaintiffs further allege that the conduct of SERVPRO and Conner was malicious and oppressive and deliberately calculated to discriminate and cause financial injury to the Plaintiffs.  For these reasons, an award of punitive and exemplary damages is warranted in an amount sufficiently large to set a public example of deterrence, in the minimum amount of $10,000,000.00 against each Defendant.

86.     Plaintiffs further allege that they are entitled to an award of attorney fees and costs pursuant to 42 U.S.C. section 1988.

### NINTH CLAIM FOR RELIEF FOR RELIEF BY PLAINTIFF TAMMY WOLOSKI AGAINST SERVPRO AND CONNER FOR DISCRIMINATION UNDER *CIVIL CODE* SECTION 51.8

87.     Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 86 of this Complaint and make the same a part hereof in this claim for relief

88.     Under California *Civil Code* section 51 and 51.8, DDCC through its Asian owner Tammy Woloski is entitled to be free from franchisor discrimination on the basis of race, ancestry, national origin, and primary language.

89.     SERVPRO and Conner violated DDCC's rights under section 51.8 when they intentionally discriminated against DDCC in forcing DDCC to overpay for numerous SERVPRO equipment items, forcing DDCC to execute the Promissory Note to secure a loan for a SERVPRO work vehicle, purporting to grant an exception to the FLA's territorial policy, although DDCC already had an office location within its prescribed territory, wrongfully advising DDCC that it could return to the National Accounts Participation program after DDCC's decision to temporarily leave the program, and extorting DDCC for "under the table" shakedown payments unrelated to DDCC's payment obligations under the FLA and Promissory Note by way of

threats of termination.

90.     Conner would mock Tammy Woloski's accent and speech, and on one occasion asked Paul Woloski "why do you let her answer the phone?" Tammy Woloski's race, Asian ancestry, and speech were at the heart of Defendants' intentional decision to discriminate against DDCC.

91.     As a result of SERVPRO's and Conner's intentional acts and the subsequent termination of the FLA, DDCC was harmed in the amount of at least the sum of $1,433,581.08 or more, with the exact amount to be proven at time of trial.

92.     Plaintiffs further allege that the conduct of SERVPRO and Conner was malicious and oppressive and deliberately calculated to discriminate and cause financial injury to the Plaintiffs.  For these reasons, an award of punitive and exemplary damages is warranted in an amount sufficiently large to set a public example of deterrence, in the minimum amount of $10,000,000.00 against each Defendant.

93.     Plaintiffs further allege that they are entitled to an award of attorney fees and costs pursuant to the *Unruh Act*.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, jointly and severally as follows:

1.     For general damages as will be shown at time of trial in the minimum amount of $2,500,000.00;

2.     For treble damages pursuant to RICO;

3.     For punitive and exemplary damages in the amount of $10,000,000.00 as against each defendant on those claims for relief where punitive damages are requested;

4.     For Declaratory relief declaring the Tennessee venue provision in the FLA to be void and unenforceable in California;

5.     For a Permanent Injunction prohibiting SERVPRO from maintaining the

Tennessee venue provision in any California FLA and from attempting to enforce same against any California franchisee;

6.     For an award of attorney fees pursuant to RICO, *California Code of Civil Procedure Section 1021.5.*, 42 U.S.C. section 1988, paragraph 13.9 of the FLA, and the *Unruh Act.*

7.     For costs of suit incurred herein;

8.     For such other and further relief as may be just and proper in the premises.


## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.



Dated: April 7, 2018                     **FRANCESCHI LAW CORPORATION**


By  /s/Ernest J. Franceschi, Jr.
        Ernest J. Franceschi, Jr.
        Attorney for Plaintiffs
        DELTA DAWGS CONSTRUCTION
        CORPORATION, TAMMY WOLOSKI,
        and PAUL WOLOSKI